FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 JUN 24  PM 3: 20

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RYAN JAMIE LEE;<br>WILLIAM LOUIS ISBELL;<br>DONALD CHRIS SHAW; and<br>JERRY A. TEICHMILLER, | )<br><br>)<br><br>) |
| PLAINTIFFS, | )     CV97-H-0227-NE |
| VS. | )<br><br>) |
| TOWN OF GOOD HOPE, | ) |
| DEFENDANT. | |

ENTERED

JUN 2 4 1998

## MEMORANDUM OF DECISION

On January 26, 1998 defendant the Town of Good Hope (the

"Town") filed a motion for summary judgment seeking judgment as a

matter of law in its favor as to: (1) plaintiff William Isbell's

overtime pay claim pursuant to an bona fide executive or

administrative exception to the Fair Labor Standard Act and (2)

all plaintiffs' breach of contract claims.  Following the court's

granting of several extensions,[1] the Town's motion for summary

judgment was deemed submitted for decision on March 20, 1998.[2]

---

[1]   The court granted an original request for an extension in
filing evidence and briefs in relation to this motion for summary
judgment by both plaintiffs and defendant on February 11, 1998.
Then the court granted a second request for an extension by
plaintiffs on February 26, 1998.  See February 11, 1998 Order;
February 26, 1998 Order.

[2]   The Town filed evidence in support of its motion for
summary judgment on February 9, 1998, which included: excerpts
and exhibits from the depositions of plaintiffs, Frankie Jones,
Alvin Hinkle and Joanner Beeler. The Town's brief in support of
the motion was filed on March 10, 1998.

On March 2, 1998 plaintiffs filed evidence in opposition to
the motion for summary judgment including: notices of claims;
excerpts and exhibits from the depositions of Joanner Beeler,
Alvin G. Hinkle, Frankie Lee Jones, and plaintiffs. Plaintiffs
filed their brief in opposition to the motion on March 20, 1998.

Plaintiffs commenced this action by filing a complaint on January 29, 1997 alleging that the Town violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, by failing to pay plaintiffs overtime compensation and failing to keep records of the hours worked by plaintiffs.  See Complaint at Count I.  In their complaint plaintiffs also allege that the Town breached its contracts with plaintiffs by: failing to employ plaintiff Lee through the funding of the "Cops Fast" Grant,[3] failing to compensate plaintiffs for time worked, failing to provide holiday and vacation pay and failing to reimburse plaintiffs for out-of-pocket necessary business expenses.  Id. at Count II.  The Town filed an answer to the complaint denying plaintiffs' allegations.  See Answer filed February 12, 1997; Amendment to Answer filed June 6, 1997.

## I.  FACTUAL BACKGROUND

The Town of Good Hope is a municipality organized under Alabama laws and governed by a Mayor and Town Council, consisting of elected officials.  See Jones depo. 24.  From May 24, 1993 until February 15, 1996, the Town of Good Hope operated a Police Department.  See Hinkle depo. 16; Lee Affidavit.  Within the Police Department a Corporal reported to a Sergeant, who in turn reported to the Chief of Police.  See Ex. 13 of Isbell Depo.  Plaintiff William Isbell served as Chief of Police for the Town.

---

[3]  Ryan Lee was the only plaintiff designated as the COPS FAST officer.  See Lee depo. 21.  Therefore, it appears that Lee is the only plaintiff with a claim for breach of contract concerning the COPS FAST grant.

Plaintiffs Ryan Lee, Chris Shaw and Jerry Teichmiller worked as Police Officers for the Town.

During the time relevant to this case, Frankie Jones served as Mayor, Joanner Beeler served as Town Clerk, and Alvin Hinkle was a Town Council member with some responsibility for the Police Department.[4]  See Jones depo. 4; Beeler depo. 5, Hinkle depo. 21.

The Town originally hired Isbell in 1993 as a Police Officer.  See Isbell depo. 8.  Isbell became the Acting Chief of Police in the Summer of 1994 and then was appointed Chief of Police in December 1994.  Id. at 21.  Isbell served as Chief of Police for the Town until the Police Department was closed on February 15, 1996.  See Lee depo. 22.

The Town hired Lee as a part-time Police Officer in September of 1994.  Id. at 11.  Lee became a full-time Police Officer in May of 1995 when the Town received a Federal granted referred to as COPS FAST.  Id. at 18-19.  From the Summer of 1995 until December of 1995 Lee worked as a Corporal, but in December he became the Town's representative on the Cullman County Drug Task Force, where he remained employed until the Police Department closed.  Id. at 24, 28; Lee Affidavit.

Chris Shaw began serving as a part-time Police Officer for the Town in August of 1994.  See Shaw depo. 24, 62.  Shortly after being hired, Shaw became a full-time Police Officer and as

_____

[4]  Plaintiffs described Hinkle as the Town's Police Commissioner, and Hinkle's deposition indicates that he held the title of Police Commissioner at some time.  See Hinkle depo. 18 & 21.  Hinkle testified that he had no authority over the Police Department.  Id. at 15.  In particular, Hinkle agreed that he had no authority to direct activities as to the employment of police officers.  Id. at 21.

a Corporal assumed Lee's duties in December of 1995 once Lee received his assignment to the Drug Task Force. Id.; Lee depo. 24. Shaw remained employed as a Corporal in the Police Department until it closed in February of 1996.

The Town hired Jerry Teichmiller as a Police Officer in October of 1993. See Teichmiller depo. 7. Teichmiller was promoted to Sergeant in December of 1994. Teichmiller quit his job with the Town in November of 1995. Id. at 7, 79.

Each week Isbell, as Chief of Police, prepared a handwritten list of the name of each Police Officer with the number of hours for which plaintiffs were to be paid, and the Mayor approved the list. See Beeler depo. 7. Then Beeler prepared plaintiffs' paychecks each week based on the hours listed by the Chief of Police (Isbell) and approved by the Mayor (Jones).[5] Id. at 11. Police Officers, including Isbell, were paid on a weekly basis each Friday for work performed from the previous Friday until Thursday. Id.

## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standard

The Town is seeking a partial summary judgment in this case. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[5] Plaintiffs assert that Mayor Jones ordered that Police Officers report no overtime work and refused to pay them for any overtime work. See Lee Affidavit; Lee depo. 45-46; Isbell depo. 60; Shaw depo. 86; Teichmiller depo. 16. The court need not address the merits of these allegations, but for purposes of this motion will assume that Mayor Jones decided that Isbell should not be paid for any overtime.

4

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the

5

moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2
F.3d at 1115.  Once the moving party makes such a showing, the
burden shifts to the non-moving party to produce significant,
probative evidence demonstrating a genuine issue for trial.

    If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in
either of two ways.  First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the non-moving party will be unable to prove its case at
trial.  Once the moving party satisfies its burden using this
method, the non-moving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

    The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to <u>affirmatively</u> show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record

evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, _____ U.S. ____, 116 S. Ct. 2175 (1996).

## III.  LEGAL ANALYSIS OF SUMMARY JUDGMENT GROUNDS

### A.   Exemption from FLSA Overtime Requirements

The Town's motion for summary judgment seeks judgment in its favor only as to a single plaintiff's, Isbell's, overtime claim under the Fair Labor Standards Act ("FLSA").  As a ground for summary judgment, the Town argues that pursuant to 29 U.S.C. § 213(a)(1) Isbell's position as Chief of Police exempts him from any overtime requirements under the FLSA because he is "employed in a bona fide executive [or] administrative . . .capacity."  29 U.S.C. § 213(a)(1).  The question of whether Isbell is exempt provides a question of fact applied to the federal regulations defining and governing FLSA exemptions.  <u>Walling v. General Industries Co.</u>, 330 U.S. 545 (1947).

The Town harbors the burden of proving that this exemption applies to Isbell and that Isbell fits "plainly and unmistakable within [the exemption's] terms and spirit."  <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960).  When determining whether an exemption exists, the court must narrowly construe

exemptions under the FLSA.  <u>Evans v. McClain of Georgia, Inc.</u> 131
F.3d 957, 965 (11th Cir. 1997).

According to the Town, Isbell's job as Chief of Police falls
under both the executive and administrative exemptions in
§ 213(a)(1).[6]  Because the evidence addresses Isbell's executive
duties more explicitly than his administrative duties, the court
deems an analysis under only the executive exemption to be the
most appropriate.

The regulations defining the bona fide executive exemption
establish two tests for determining if a particular employee
qualifies for the exemption from the FLSA overtime provision.
These two tests are commonly referred to as the "long test" and
the "short test."[7]  <u>Atlanta Professional Firefighters Union v.</u>

---

[6]  Based on the regulations, the Town attempts "tacking" or
the combining duties falling under both the executive and
administrative areas to prove Isbell is exempt.  <u>See</u> 29 C.F.R. §
541.600; Defendant's Brief at 32.

[7]  The **"long test"** provides that an employee is employed in a
bonafide executive capacity" if:

(a) The employee's "primary duty consists of the
management of the enterprise in which he is employed or
of a customarily recognized department of [sic]
subdivision thereof"; **and**

(b) The employee "customarily and regularly directs the
work of two or more other employees therein"; **and**

(c) The employee "has the authority to hire or fire
other employees or whose suggestions and
recommendations as to the hiring or firing and as to
the advancement and promotion or any other change of
status of other employees will be given particular
weight; **and**

(d) The employee "customarily and regularly exercises
discretionary powers; **and**

(e) The employee "does not devote more than 20 percent,
or, in the case of an employee of a retail or service

8

Atlanta, 920 F.2d 800, 804 (11th Cir. 1991); 29 C.F.R. §§ 541.1.

The Town engages the "short test" to prove the exemption.

29 C.F.R. §§ 541.1(f). Plaintiffs argue that the Town is

required to employ the "long test" due to the "tacking" of the

administrative and executive duties to prove the exemption.[8]

_____

> establishment who does not devote as much as 40
> percent, of his hours of work in the workweek to
> activities which are not directly and closely related
> to the performance of work described in paragraphs (a)
> through (d) of this section: Provided, That this
> paragraph shall not apply in the case of an employee
> who is in sole charge of an independent establishment
> or a physically separated branch establishment, or who
> owns at least a 20-percent interest in the enterprise
> in which he is employed;" **and**

> (f) The employee "is compensated for his services on a
> salary basis at a rate of not less than $155 per week
> . . ., exclusive of board, lodging, or other facilities
> . . .

29 C.F.R. § 541.1.

The **"short test"** includes only the following:

> Provided, That an employee who is compensated on a
> salary basis at a rate of not less than $250 per week
> . . ., exclusive of board, lodging, or other
> facilities, and whose primary duty consists of the
> management of the enterprise in which the employee is
> employed or of a customarily recognized department or
> subdivision thereof, and includes the customary and
> regular direction of the work of two or more other
> employees therein, shall be deemed to meet all the
> requirements of this section.

29 C.F.R. § 541.1(f)

[8] Plaintiffs correctly point out that the regulation
authorizing "tacking," 29 C.F.R. § 541.600, mandates that when
combining exemptions the defendant "must meet the stricter of the
requirements on salary and nonexempt work" established in the
individual regulations. 29 C.F.R. § 541.600. Were the court to
consider the executive and administrative exemptions together,
based on tacking, then a comparison of the tests would require
the court to apply the "long test" as the stricter standard. See
Shockley v. City of Newport News, 997 F.2d 18, 29 (4th Cir.
1993).

9

Because the court is considering only the executive exemption at this time, the short test can be utilized.

### 1.   Was Isbell Paid On A Salary Basis?

There is no dispute that Isbell earned a weekly pay of more than $250.  See Tab I of Plaintiffs' Submission.  Plaintiffs assert that Isbell was not paid "on a salary basis" because his compensation was reduced based on the quantity of time he worked. The regulations define a "salary basis" as follows:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed.  Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.  This policy is also subject to the general rule that an employee need not be paid for any work week in which he performs no work. . .

29 C.F.R. § 541.118(a).  A review of the payroll records demonstrates that Isbell received a consistent amount of base pay each week, with some additional pay for overtime.  See Tab I of Plaintiffs' Submission.  The payment of an hourly rate for hours worked beyond the regular schedule does not defeat the executive exemption.  York v. City of Wichita Falls, 944 F.2d 236, 242 (5th Cir. 1991).

Plaintiffs argue that although the amount of pay was not actually reduced in dollars, Isbell received a reduction in the amount of pay he was entitled to receive in the pay period ending January 11, 1996, when he was paid his regular weekly pay for three days of work and two comp days.  Plaintiffs' Brief 20-21.

In other words, plaintiffs argue that substituting earned comp days for mandated days off and paying Isbell only his regular wages reduces his pay by failing to provide pay for the earned comp days.  Plaintiffs argue that because the Town is required to pay an employee who is "on a salary basis" his full salary for any week in which he performs any work without regard to the number of days or hours worked, the Town reduced Isbell's salary for the pay period ending January 11, 1996, by paying him for only five days rather than seven days.

The evidence fails to convince the court that any "reduction" or "deduction" in Isbell's salaried pay occurred or would occur "as a practical matter.".[9]  See Auer v. Robbins, ____ U.S. ____; 117 S. Ct. 905, 911 (1997); McDonnell v. City of Omaha, 999 F.2d 293, 297 (8th Cir. 1993)(offsetting leave days not a reduction unless no paid leave available).  Plaintiffs fail to point to the existence of any policy or procedure requiring payment by the Town for comp time.  The court notes that Isbell's payroll records indicate he was paid for comp time on several occasions.  However, the court views none of the evidence presented as sufficient that Isbell was entitled to be compensated for the two comp days if he had not taken them during the pay period ending January 11, 1996.  Based on the payroll

---

[9]  Plaintiffs argue that Isbell was not on a "salary basis" in compliance with 29 C.F.R. § 541.118 because Isbell testified that the Mayor forced him to take the two days in comp time.  See Isbell depo. 127.  Section 541.118(a)(1) excludes an employee from being considered to be "on a salary basis" if "deductions from his predetermined compensation are made for absences occasioned by the employer."  29 C.F.R. § 541.118(a)(1).  However, based on the court's determination that no "deduction" occurred, evidence that the Mayor forced Isbell to take comp time does not rendered him ineligible for "salary" status.

records and Isbell's own testimony that he was basically paid the
same amount of money each pay period, the court concludes that
the Town has carried its burden in relation to demonstrating that
Isbell was paid on a salary basis.  See Isbell depo. 127-28.

### 2.  Were Executive Duties Isbell's Primary Duties?

Under the short test, the Town must demonstrate that
Isbell's "primary duty consists of the management of the
enterprise in which [Isbell] is employed or of a customarily
recognized department or subdivision thereof, and includes the
customary and regular direction of the work of two or more other
employees." 29 C.F.R. § 541.1(f).  The term "primary duty" as
defined by 29 C.F.R. § 541.103, requires a consideration of all
the facts in a particular case.  While the regulations give a
good rule of thumb that a primary duty is one that an employee
spends more than 50 percent of his time doing, it goes on the
state that "[t]ime alone . . . is not the sole test" and other
pertinent factors may support a conclusion that management is the
primary duty.  29 C.F.R. § 541.103.

When reviewing the evidence relating to how Isbell allocated
his time among non-exempt and exempt work, there appears to be a
factual dispute.  Isbell states in his deposition that he was out
on the road patrolling, like other police officers, ninety-nine
percent of the time he was working.  See Isbell depo. at 139.
The Town produced a memorandum on Town of Good Hope Police
Department letterhead which indicates that it was written under
Isbell's name and states that the "Chief of Police who is
assigned patrol duties on the day shift, five days a week, spends

12

about four to five hours a day in the office." See Ex. 16 of
Isbell depo. (Tab. E of Defendant's Submission).  Isbell denies
that he spent four to five hours a day in the office doing work
and denies that he wrote the memorandum labeled Exhibit 16.  See
Isbell depo. at 140-41. However, Isbell admits having seen
Exhibit 16 at some time while he was employed by the Town's
police department.  Id. at 143.  Due to the disputed nature of
the actual allocation of Isbell's time between executive and non-
exempt duties, such as patrolling, the court cannot make any
determination of the exemption premised on Isbell's use of his
time.  For purposes of this motion the court will construe this
factual dispute in favor of plaintiff and assume that plaintiff
spends less than 50% of his time on management duties.  Yet, an
employee is not presumed to have a primary duty of nonmanagement
when the court finds that the employee spends less than 50% of
his time on managerial duties.  Auer v. Robbins, 65 F.3d 702, 712
(8th Cir. 1995), affirmed on other grounds, _____ U.S. ____; 117
S. Ct. 905 (1997); see also, Keller v. City of Columbus, 778 F.
Supp. 1480, 1489 (S.D. Ind. 1991).

     The regulation defining "primary duties" allows further
consideration based on other factors when an employee has been
found to spend less than 50% of his time on management duties.
29 C.F.R. § 541.103; Hays v. City of Pauls Valley, 74 F. 3d 1002,
1007 (10th Cir. 1996).  Some of these factors include: the
relative importance of the managerial duties as compared with
other types of duties, the frequency with which the employee
exercises discretionary powers, his relative freedom from
supervision, and the relationship between his salary and the

wages paid other employees for the kind of nonexempt work performed by the supervisor.  Isbell's relative freedom from supervision is evidenced by his testimony that he was "told by the mayor to run the [police] department as [he] saw fit at that time."  See Isbell depo. 122-123.

As to the relative importance of Isbell's managerial duties and the frequency with which he exercises discretionary powers, the court analyzes the evidence relating to Isbell's known managerial duties.  "[U]nder the short test[], the employee's primary duty will usually be what [he] does that is of principal value to the employer, not the collateral tasks that [he] may perform, even if they consume more than half [his] time.  Dalheim v. KDFW-TV, 918 F. 2d 1220, 1227 (5th Cir. 1990).  Isbell was responsible for the proper training and accreditation of the police officers.  Id. at 149-50.  As Police Chief, Isbell kept the Mayor and Town Council advised of activities going on involving his department.  Id. at 128; Defendant's Ex. 14 to Isbell depo.  Isbell held department meeting, where he set the agenda of subjects to be discussed.  Id. at 147-48.  All time sheets and daily activity reports by police officers were reviewed by Isbell.  Id. at 59-60.  On numerous occasions, Isbell issued memoranda to all Police Department personnel concerning a complaint procedure, discipline, other procedures and instructions.  See Defendant's Exs. 13,15,& 17 to Isbell depo.

Lee testified that there was no one in the Police Department that Isbell did not have supervision over.  See Lee depo. 21. According to Shaw, Isbell prepared the schedule for the Police

Officers each week.  See Shaw depo. 154.  Shaw stated that Isbell
instructed Shaw to keep a daily activity report.  Id. at 69.

Even during Isbell's purported patrol time, he apparently
performed some executive duties as Police Chief.  At times he
would return to town hall for responsibilities, such as meeting
with the Mayor.  See Isbell depo. 137-38.  While in the car
patrolling Isbell on occasions would be called by other officers
concerning situations.  Id. at 139.

Isbell clearly testifies that his daily work hours extended
beyond the 7 a.m. to 3 p.m. patrolling time.  Id. at 122.
According to Isbell, he "was there at all different times.  Being
a police chief, you're out there a lot of hours.  You know, you
have to be out there to see what's going on and stuff."  Id.
Thus, each day Isbell's regular duties extend far beyond the non-
exempt routine patrolling shift he performed.

A comparison of Isbell's salary was not provided by the
parties.  In Shaw's deposition he states that as a full-time
patrolman he earned around $7.25 or $7.32 an hour.  See Shaw
depo. 63.  When dividing Isbell's regular weekly pay over 40
hours his relative hour rate would be $7.98 per hour.  See Tab I
of Plaintiffs' Submission.  While this is not a large pay
differential, the evidence presented indicates that Isbell was
being compensated at a higher rate than the police officers
working under him that performed only non-exempt work.

Based on this evidence, the court concludes, as another
court did in Shockley v. City of Newport News, 997 F.2d 18, 27
(4th Cir. 1993), that Isbell's primary responsibilities and the
roles most important to the Town included the evaluation of his

subordinates and the management of both people and equipment assigned to the department.  Clearly, Isbell's management duties were of much greater importance to the Town than his shift work patrolling.  There appears to be no dispute that Isbell was conducting the customary and regular direction of two or more employees, in that all three co-defendants admit being under his direction and supervision.

Based on the foregoing, the court concludes that Isbell's position as Police Chief comes within the executive exception to overtime requirements under the FLSA.  While the time allotment issue is troubling, the factual description of the day-to-day operation of the Town's police department leaves the court with a distinct conviction that Isbell was truly managing the department and thereby acting as its executive.  Defendant is entitled to summary judgment in its favor on Isbell's overtime pay claim.

**B.   Breach of Contract Claims**

Count II of plaintiffs' complaint makes very general allegations concerning the Town's purported breach of one or more contract with plaintiffs.  Each of plaintiffs' articulated claims are discussed separately below.

### 1.   Lee's Claim of An Employment Agreement for Three to Four Years based on COPS FAST

According to the evidence presented, plaintiff Lee is the only plaintiff asserting that the Town contracted with him for continued employment for a definite time period.[10]  In

---

[10]   The Town points to specific testimony in Shaw's deposition demonstrating Shaw was an employee-at-will.  See Shaw

particular, Lee asserts that the Town agreed to employ him as a Police Officer for three to four years following approval of the COPS FAST grant application in May 1995. President Clinton instigated the COPS FAST program as a means of putting more police officers on the street.  <u>See</u> Lee depo. 20.  The Town, through Police Chief Isbell and Mayor Jones, applied for the COPS FAST grant on March 9, 1995.  <u>See</u> Ex.11 to Isbell depo.  The Town learned that the COPS FAST grant had been approved in May of 1995.  <u>See</u> Lee depo. 14.  When the grant application was approved in May 1995, Lee became a full-time police officer and was designated as the COPS FAST officer.  <u>Id.</u> at 18-21.

According to Lee, in September of 1994, Chief Isbell, Mayor Jones and Hinkle told Lee that as soon as the COPS FAST grant came into play Lee would begin a full-time schedule if he decided to work for the Town, and Lee would be guaranteed three years of employment through the grant, with the grant requiring one year of employment after the grant ended.  <u>See</u> Lee depo. 14; Lee Affidavit.  Lee admitted that he did not actually receive an offer to work for the Town at that time, but was offered the job three days before he started part-time work in September of 1994. <u>See</u> Lee depo. 15.  In his affidavit, Lee states the following:

> When I was interviewed and hired, and later when I helped prepare the COPS Fast budget application, Isbell, Hinkle, and Jones told me that the Town would maintain the grant for a minimum period of three years. I accepted that assurance as part of their offer to me

---

depo. 68-69.  As to Isbell an employee-at-will relationship can be assumed, due to the absence of any contrary evidence. Teichmiller voluntarily terminated his employment with the Town prior to the Police Department's closing in order to take other employment, thereby demonstrating an employee-at-will relationship.

> of guaranteed, full-time employment for the duration of
> the grant.

See Lee Affidavit (Tab M of Plaintiffs' Submission).

The Town asserts that there is no such employment contract
because Lee has failed to present substantial evidence of a
"clear and unequivocal offer" of employment for a definite
duration.  Howard v. Wolff Broadcasting Corp., 611 So. 2d 307,309
(Ala. 1992); Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725,
728 (Ala. 1987).  The only other evidence presented concerning
whether an offer was made is defendant's assertion that because
the COPS FAST grant had not been awarded, and possibly not
applied for at the time of the purported offer, it was a
contingent statement.  However, all the evidence indicates that
there was no eventual problem with the COPS FAST grant receipt,
but rather the Police Department who was the recipient simply
ceased to exist.

Yet, based on Lee's own testimony, the court concludes that
the circumstances surrounding Lee's hiring merely demonstrates an
expectation or assumption by plaintiff Lee and falls short of
providing sufficient evidence of a "clear and unequivocal offer"
for employment for 3 or 4 years.

Additionally, the Town argues that any such contract would
be void under Alabama's statue of fraud, *Ala. Code* § 8-9-2,
requiring that an agreement appear in written form if the
agreement cannot be performed within one year of its making.  The
COPS FAST application makes no mention of Lee.  See Ex. 11 of
Isbell depo (Tab E of Defendant's Submission).  Clearly, the
contract alleged by Lee was for three to four years and could not

be performed, under its own terms, within one year. Therefore, Lee's alleged employment contract falters due to the statute of frauds, as with a similar alleged contract in Selby v. Quartol Corp., 514 So. 2d 1294, 1295 (Ala. 1987).

Finally, even assuming there was a contract between the Town and Lee to employ Lee for three to four years as a Police Officer, this agreement included an implicit term that the Town would continue to have a need for Lee's services. Bates v. Jim Walter Resources, Inc., 418 So. 2d 903, 906 (Ala. 1982). Once the Town decided to close its Police Department in February of 1996, then it clearly was no longer in need of Lee's services. Based on the foregoing, the Town's motion for summary judgment is due to be granted as to Lee's COPS FAST contract claim.

### 2. Compensation for Time Worked

In their brief plaintiffs assert that they have presented sufficient facts to support a claim under Alabama law for "compensation for the time they actually worked" relying on Century 21 AAA Better Homes, Inc. v. SouthTrust Bank, 632 So. 2d 1336 (Ala. 1994) and Jim Walters Corporation v. Knodel, 281 Ala. 173, 200 So. 2d 473(1967). It appears that plaintiffs are now asserting a quantum meruit claim for time worked for which they were not paid. However, the complaint at no time mentions "quantum meruit" but relies expressly on a written agreement under which the Town was to pay plaintiffs for hours worked. See Complaint, Count II at ¶ 20. Thus, plaintiffs have not properly asserted any quantum meruit or quasi-contract theory for recovery of compensation for hours worked in this action. Even assuming plaintiffs' complaint is broad enough to somehow embrace a

19

quantum meruit type claim, plaintiffs have failed to come forward with evidence indicating the number of hours at issue, and the value or worth of the labor they furnished. <u>Fidelity and Guaranty Ins. Co. V. Sturdivant</u>, 622 So. 2d 1279, 1294, n.2 (1993). Due to this absence of sufficient evidence, the Town's motion for summary judgment is due to be granted as to plaintiffs' claim of compensation for time worked.

### 3. Contract to Provide Holiday and Vacation Pay

According to plaintiffs, Isbell, Lee and Teichmiller assert that the Town contracted with them to provide vacation and holiday pay by way of a published personnel policy that was in force and applicable to them during their employment.[11] Plaintiffs rely heavily on the <u>Amoco Fabrics and Fibers Co. V. Hilson</u>, 669 So. 2d 832 (Ala. 1995) case. The Town's personnel policy was posted in the Town Hall and provided for: (a) "10 holiday for all full time employees, except emergency employees," (b) vacations for full-time employees; and (c) sick leave for full-time employees. <u>See</u> Ex. 12 of Isbell depo. (Tab E of Defendant's Submission).

In order for an employee handbook or other document issuing employment guidelines, rules or policies to constitute a binding unilateral contract, plaintiff must demonstrate the following: (1) the language contained in the document must be specific enough to constitute an offer; (2) the offer must be communicated to the employee by issuance of the handbook, or otherwise; (3) the employee must have accepted the offer by retaining employment

---

[11]   Plaintiff Shaw makes no claim concerning holiday and vacation pay.

after he has become generally aware of the offer.  Hoffman-La
Roche Inc. v. Campbell, 512 So. 2d 725, 735 (Ala. 1987).  The
Town argues that plaintiffs have presented no evidence of
acceptance of any such offer or consideration.  Plaintiffs argue
that the Town is attempting to require proof of "reliance" which
is not part of a breach of contract claim.

While the Alabama cases do not formally require "reliance"
as has been recognized in fraud cases, they do require some link
between the continued employment by an employee and his knowledge
or general awareness of the offer.  The parties generally agree
that the Personnel Policy was posted at Town Hall.  However,
plaintiffs failed to guide the court to any evidence indicating
that plaintiffs were generally aware of this Personnel Policy and
thereafter continued their employment in acceptance of the offer
and as consideration for the contract.  Additionally, based on
the sketchy details about the "posting" of this Policy at Town
Hall plaintiffs have failed to provide evidence showing that the
manner of posting actually communicated the policy to plaintiffs.
Based on the foregoing, the Town is entitled to summary judgment
in its favor as to the breach of contract claim relating to
vacation and holiday pay.

### 4. Contract For Reimbursement of Necessary Expenses

Plaintiffs Ryan Lee and Jerry Teichmiller assert that they
have incurred expenses necessary to their police work  for which
they were not reimbursed.[12]  Lee claims he should have been

---

[12]   Although Count II of the Complaint does not limit this
claim to plaintiffs Lee and Teichmiller, Shaw's deposition
testimony precludes any inference that he makes a claim for
expense reimbursement and plaintiffs have presented no evidence

reimbursed for expenses incurred relating to the care of a police
dog, including food, veterinary care, toys, and pseudo drugs for
training; audio tape recorders; audio tapes; a ticket book
holder; a clipboard; uniforms; boots; ammunition; a patrol car
medical kit; and fuel for police cars.  See Lee depo. 220-24.
Teichmiller claims he is entitled to reimbursement for expenses
incurred when purchasing necessary police equipment, such as car
batteries, CB radios, car organizers, hat badges and rain covers.
See Teichmiller depo. 25, 53, 61-62.  The Town argues that Lee
and Teichmiller's reimbursement claims fail because they cannot
present any evidence of an offer by an authorized agent of the
Town to reimburse such expenses.

        Lee states in his affidavit that he purchased this equipment
at the request of Isbell and/or Teichmiller, and the requests to
buy certain items were made in the presence of Hinkle.  See Lee's
Affidavit (Tab M of Plaintiffs' Submission).  Teichmiller
testified that Alvin Hinkle asked him if he could get the police
cars running.  See Teichmiller depo. 55.  The statement in
plaintiffs' brief that all the purchases "were made at the
request and/or with the approval or knowledge of . . . Hinkle,
Isbell . . . and/or in Lee's case, Teichmiller" is an
overstatement based on the evidence submitted.

        In plaintiffs' brief the only arguable evidence of such an
offer is Teichmiller's testimony stating the following:

> I just told him [Hinkle], I said, you know, I'm
> spending a lot of my time and money out of my pocket on
> these vehicles.  You know, I said, are we going to be
> able to take care of that?  Of course, I got an

indicating any such claim by Isbell.  See Shaw depo. 56.

22

affirmative answer, but nothing ever happened.

See Teichmiller depo. 60. This ambiguous statement falls short of providing sufficient evidence of any offer by the Town to reimburse expenses incurred by Lee and Teichmiller. Thus, plaintiffs have failed to prove an actual contract for reimbursement of expenses.

Plaintiffs argue that even in the absence of any offer to pay expenses, the Town can be required to reimburse plaintiffs for necessary expenses incurred based the legal principles of quantum meruit or unjust enrichment.

> In the absence of an express agreement, the obligation, if any, **to pay for work and labor** rests on a quantum meruit, and may arise by legal implication without regard to the assent of the parties, on the theory or doctrine of unjust enrichment, or performance by one not a mere volunteer of a legal duty resting on another, or may result from a contract inferred or implied, in fact, or as a matter of law, or from quasi-contract. In determining the intention of the parties with respect to compensation for the labor performed, the court may consider the justice or injustice of a claim thereof.

Burgess Min. & Const. Corp. v. Lees, 440 So. 2d 321, 337 (Ala. 1983)(quoting 98 C.J.S. *Work & Labor* § 1, at 719-20 (1957))(other citations omitted)(emphasis added).[13] Actions brought under the theory of unjust enrichment and quasi contract claims, such as quantum meruit, are essentially the same. 42 C.J.S. *Implied Contracts* § 5 at 7 (1991). "Under the doctrine of quasi-

---

[13]  Technically, a common law action to recover the value of goods provided or delivered is a "quantum valebant" action.  See Black's Law Dictionary (6th ed. 1980).  Quantum meruit refers to a common law action to recover compensation for work or labor performed.  Id.  Yet, both courts and legal commentators refer to "quantum meruit" as collectively embracing both work performed and valuable materials accepted.  98 C.J.S. Work & Labor § 10 at 728 (1957).

contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another, who has a reasonable expectation of compensation." American Family Care v. Fox, 642 So. 2d 486, 488 (Ala. Civ. App. 1994).

In this case, plaintiffs Lee and Teichmiller have failed to present sufficient proof that they each had a reasonable expectation of compensation. In relation to Lee, plaintiffs have failed to point to any evidence demonstrating that the circumstances surrounding the expenses incurred provided a reasonable expectation that he would be reimbursed. While Lee states in his affidavit that generally Isbell or Teichmiller knew of, requested or approved these expenditures, there is no evidence as to who requested or approved what purchases and whether Teichmiller's position as sergeant allowed him to authorize reimbursements. Similarly, Teichmiller has failed to present any evidence indicating that his expectation of payment was reasonable under the circumstances.

When asked whether he had any conversations with anyone with the Town about getting reimbursed for "all or any part of these expenses" he incurred, Teichmiller responded by saying "No, because I knew I would be wasting my time, so I didn't." See Teichmiller depo. at 65. Plaintiffs argue that defendant has taken this statement out of context based on its timing and the reference to "these expenses" was understood to be limited to only uniform furnishings. Based on the record before this court, this statement appears as strong evidence that during his

24

employment with the Town Teichmiller did not have a reasonable expectation of reimbursement for the expenses he had incurred. There can be no recovery for unjust enrichment nor quantum meruit where there is no reasonable expectation of payment.  Utah Foam Products, Inc. v. Polytec, 584 So. 2d 1345, 1340 (Ala. 1991).

Additionally, Lee and Teichmiller have failed to present evidence concerning the benefit the Town received from these expenses as well as any evidence concerning the value or worth of the materials furnished.[14]  Based on the foregoing, defendant is entitled to summary judgment on plaintiffs' claims for reimbursement of expenses.

In summary, the Town's motion for partial summary judgment is due to be granted.  Judgment as a matter of law will be entered in favor of the Town on plaintiff Isbell's overtime claim under the FLSA and on all plaintiffs' breach of contract claims. The only claims remaining in this action are the overtime claims by plaintiffs Lee, Shaw and Teichmiller.  A separate order will be entered.

DONE this the ___24th___ day of June, 1998.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[14]  In relation to the CB radios, Teichmiller testified that the City refused to return them to him and he estimated their value and the cost of installation at about four hundred dollars. See Teichmiller depo. 61 & 63.  Although this court deems these facts to be insufficient to support recovery under a quantum meruit or unjust enrichment claim, the court does not intend this decision to prejudice any subsequent effort to pursue a claim of replevin.